U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

SEP - 6 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MARY DOW, ET AL | : | DOCKET NO. 2:07 CV 0532 |
| VERSUS | : | JUDGE MINALDI |
| ARROW TERMINALS, INC., ET AL | : | MAGISTRATE JUDGE WILSON |

### REPORT AND RECOMMENDATION

Presently before the court is Plaintiffs' Motion to Remand. (Doc. 9). Plaintiffs originally filed this suit in the 14th Judicial District Court for Calcasieu Parish, Louisiana. They seek damages caused as a result of an accident that occurred on February 20, 2006. The victim, Terry Dow (Dow), was working as an employee of James J. Flanagan Stevedores (JJFS), and was involved in lumber stacking operations at the Port of Lake Charles. He was severely injured when a bundle of lumber fell on him. Plaintiffs are all citizens of Louisiana. One of the defendants, Anthony Damron (Damron), is also a citizen of Louisiana. Defendants removed the case to this court contending that this court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332. They contend that the non-diverse defendant, Damron, can be disregarded as he was fraudulently/improperly joined. (Doc. 1).

Fraudulent/Improper Joinder

Once a case has been removed, the burden lies with the removing party to prove that the court has jurisdiction to decide the claim. *Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). One

prerequisite to removal is that this court must have original jurisdiction. 28 U.S.C. § 1441(a). Defendants rely on diversity jurisdiction pursuant to 29 U.S.C. § 1332 to satisfy this requirement. If removal is based on the claim that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by*, *Illinois Cent. R. Co. v. Smallwood*, ___ U.S. ___, 125 S.Ct. 1825 (4/18/2005)(citing, *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). There is no alleged fraud in these cases. Accordingly, our focus is the second basis for improper joinder. *See, Travis, supra*.

The focus of the court's inquiry is on the joinder of the forum state citizen, not on the merits of Plaintiff's case. *Smallwood, supra* at 573. In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the in-state/non-diverse defendant; *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the in-state/non-diverse defendant. *Smallwood, supra*.

The court may resolve this issue in one of two ways:   1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the in-state/non-diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood, supra*. Ordinarily, if Plaintiff survives the 12(b)(6) analysis there is no improper joinder. *Id.* The "summary inquiry is appropriate only to identify

2

the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id* at 573-74.[1] The motive or purpose for the joinder of the in-state defendant is irrelevant to this inquiry. *Id.* at 574. The court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis, supra*. Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete (and/or removal is improper), and remand is required. *Id.*

Plaintiffs have alleged that the accident at issue here was caused by the fault of Arrow Terminal, Inc. (Arrow) and Gearbulk, Inc. in stacking the bundles in an unsafe manner and in failing to warn Dow of the dangers in the area where the accident occurred. ¶ 6 Petition for Damages. With regard to Damron, Plaintiffs allege that he "was Port Captain for Defendant, Arrow Terminals, Inc. and or Gearbulk, Inc. and was responsible for all supervision, directions, instructions, and safety of the lumber stacking procedure in the transit shed where the accident occurred. ¶ 8 Petition for Damages.

In *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973) the Louisiana Supreme Court considered when and under what circumstances an officer or employee can be individually liable to a third person damaged solely by reason of the officer's or employee's breach of an employment-imposed duty. The court established the following criteria essential for imposing individual liability in this situation:

> 1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.

---

[1] In other words, facts that can be easily disproved if not true. *Id.*

2. This duty is delegated by the principal or employer to the defendant.

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

283 So.2d at 721.

Damron was an employee of Gearbulk, Inc. He was the port captain for Gearbulk and acted as the terminal manager for Arrow. Damron Affidavit. Gearbulk is an agent for vessels chartered to Gearbulk Pool, Ltd. that call at the Port of Lake Charles. *Id.* At the times relevant here Arrow leased warehouse space from the port of Lake Charles including the warehouse where Dow's accident occurred. Dow's employer, JJFS, had agreed to provide stevedoring services to Gearbulk Pool, Ltd. Memorandum in Opposition, Exh. 2. Under this agreement JJFS agreed to handle the cargo from vessel to place of rest in the warehouse, and to employ safe working practices and procedures. *Id.* On the date of Dow's accident a vessel arrived at the Port of Lake Charles with a cargo that included fence boards. Damron Affidavit. JJFS began unloading the cargo, moving the cargo to the warehouse, and stacking the cargo in the

warehouses. *Id.* The entire operation, from unloading the vessel to safely stacking the cargo, was performed solely by JJFS and its employees. *Id.* JFFS' clerk-in-charge determined how high the lumber would be stacked. Jenkins affidavit & Damron depos. p. 30.[2] Damron was not present at the time of the accident and had not been present at the facility at any time that day. *Id.* He gave no instruction to JJFS regarding the stacking of the bundles of fence boards. *Id.* The bundle of fence boards that fell on Dow that day had been unloaded and stacked in the warehouse by JJFS that same day. *Id.*

There is some evidence indicating that prior to Dow's accident stacks of lumber had fallen an average of once every two months. Reeves Affidavit. On at least two occasions the stacks fell and damaged the walls of the warehouse. *Id.* Damron admits that it was within his authority to stop any activity in the warehouse that he felt was unsafe. Damron depos. pp. 32-3. Damron was the person from Gearbulk and Arrow that was responsible for safety issues. Damron depos. p. 37.

In essence Defendants claim that they had no relevant legal duty that was owed to Dow, and that any duty that Arrow or Gearbulk had was delegated to JJFS, not to Damron. However, in assessing whether Damron was fraudulently/improperly joined we must construe the facts in the light most favorable to Plaintiffs. Defendants argue that the issue of whether a duty was owed to Dow is a matter of law, but they have cited no authority that rules out Defendants owing a duty to Dow. Alternatively, Defendants argue that any duty related to the safe handling of the cargo was delegate by Arrow and/or Gearbulk to JJFS not to Damron. However, there is no

---

[2] Plaintiff has submitted the affidavit of Phillip Reeves suggesting that Damron was the one that gave instructions on how high the lumber was stacked. His affidavit fails to show that he has first hand knowledge of such fact.

summary judgment evidence ruling out that Damron was delegated legal duties relative to safety. In fact, Damron's deposition testimony indicates he had been delegated certain responsibilities relative to safety. The fact that JJFS bore some of the responsibility for safety of the operation does not preclude Damron also having a duty in this regard. There is no evidence that Damron delegated any duty he had with regards to safety to others. Further, the fact that Damron was not present during the particular operation which led to the accident at issue does not preclude the possibility of his liability. His fault may be based on his failure to act either in face of known risks or where he should have known of an unreasonable risk of harm.

In short, when the facts are construed in the light most favorable to Plaintiffs Defendants have not ruled out the reasonable possibility of liability on the part of Damron. Therefore, Defendants have failed to show that Damron was fraudulently/improperly joined, and his presence precludes jurisdiction. Accordingly, it is recommended that the motion to remand be GRANTED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6th day of September, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE